OPINIONS OF THE SUPREME COURT OF OHIO

The full texts of the opinions of the Supreme Court of Ohio are being transmitted electronically beginning May 27, 1992, pursuant to a pilot project implemented by Chief Justice Thomas J. Moyer.

Please call any errors to the attention of the Reporter's Office of the Supreme Court of Ohio. Attention: Walter S. Kobalka, Reporter, or Justine Michael, Administrative Assistant. Tel.: (614) 466-4961; in Ohio 1-800-826-9010. Your comments on this pilot project are also welcome.

NOTE: Corrections may be made by the Supreme Court to the full texts of the opinions after they have been released electronically to the public. The reader is therefore advised to check the bound volumes of Ohio St.3d published by West Publishing Company for the final versions of these opinions. The advance sheets to Ohio St.3d will also contain the volume and page numbers where the opinions will be found in the bound volumes of the Ohio Official Reports.

Conley, Appellant, v. Shearer, Appellee.

[Cite as Conley v. Shearer (1992),     Ohio St.3d     .]

Court of Claims -- R.C. 2743.02(F) does not violate the Equal Protection Clauses of the United States and Ohio Constitutions.

R.C. 2743.02(F) does not violate the Equal Protection Clauses of the United States and Ohio Constitutions.

(No. 91-1009 -- Submitted February 26, 1992 -- Decided August 12, 1992.)

Appeal from the Court of Appeals for Butler County, No. CA90-05-088.

On September 29, 1989, Dwayne Conley, appellant, filed a complaint in Butler County Common Pleas Court, alleging that Kurt Shearer, appellee, a Special Agent III employed by the Ohio Bureau of Criminal Identification and Investigation ("BCI"),1 "maliciously, recklessly, wantonly, willfully and wrongfully identified and continued to maintain that [Conley] was the person who sold drugs." In addition to malicious prosecution, Conley alleged claims of defamation and a violation of Section 1983, Title 42, U.S.Code. Criminal charges had been filed against Conley but were dismissed upon a showing that Shearer had incorrectly identified Conley as the person involved in the sale of drugs. Conley alleged that, as a result of Shearer's wrongdoing, he lost his job and incurred legal expenses. The complaint did not specify whether Conley was suing Shearer in his individual capacity or his official capacity as an employee of BCI, although it was Shearer's actions as a BCI agent which caused criminal charges to be filed against Conley. Neither the state of Ohio nor BCI was named as a defendant in the complaint.

The Attorney General's office filed a motion to dismiss on behalf of Shearer. The motion argued that the trial court was without subject matter jurisdiction based upon R.C. 2743.02(F), that Shearer was entitled to personal immunity under R.C. 9.86, and that the Court of Claims must initially make a determination with regard to immunity from suit before a court of common pleas could have jurisdiction over the action. After the parties had submitted memoranda but prior to the court's decision on the motion to dismiss, Conley filed an affidavit

with the court expressly waiving any right he may have had to sue the state of Ohio because of his claims against Shearer. On April 16, 1990, the common pleas court dismissed the action. The court of appeals affirmed.

The cause is now before this court upon the allowance of a motion to certify the record.

Richard L. Hurchanik, for appellant.

Lee I. Fisher, Attorney General, Raul Rosado, Jr. and Simon B. Karas, for appellee.

Moyer, C.J.    The issue presented by this appeal is whether R.C. 2743.02(F) violates the Equal Protection Clauses of the United States and Ohio Constitutions. R.C. 2743.02(F) requires a plaintiff who potentially has a claim against the state as a result of a state employee's conduct to first file an action in the Court of Claims for an adjudication of whether the employee is entitled to immunity under R.C. 9.86. For the following reasons, we conclude that R.C. 2743.02(F) is constitutional under both the United States and Ohio Constitutions and, therefore, affirm the judgment of the court of appeals with regard to Conley's state-law claims. However, we reverse the court of appeals' judgment affirming the dismissal of Conley's Section 1983 claim.

Historically, immunity for government officials and employees was derived from the legal fiction that "[t]he King could do no wrong, so any mistake in judgment on the part of the King's officials was an act for which the government would take no responsibility." Civil Actions Against State Government, Its Divisions, Agencies and Officers (Winborne Ed. 1982) 230, Section 6.2. This court held many years ago that the state and its officers were immune from tort and other liability for wrongs committed by agents of the state when acting in their official capacity. State v. Franklin Bank (1840), 10 Ohio 91, reversed on other grounds sub nom. Franklin Branch Bank v. Ohio (1862), 66 U.S. (1 Black) 474, 17 L.Ed. 180; Miers v. Zanesville & Maysville Turnpike Co. (1842), 11 Ohio 273.

In 1912, the Ohio Constitution was amended to allow actions to be brought against the state. That amendment to the Constitution, Section 16, Article I, provides in part as follows: "Suits may be brought against the state, in such courts and in such manner, as may be provided by law." This provision was "not self-executing," and constituted only an authorization for subsequent statutes in which the General Assembly could grant its specific consent to be sued. Raudabaugh v. State (1917), 96 Ohio St. 513, 518, 118 N.E. 102, 103. Thus, in the absence of such consent, an action based on tort was not properly maintainable against the state or its officers or employees. Krause v. State (1972), 31 Ohio St.2d 132, 144, 60 O.O.2d 100, 106, 285 N.E.2d 736, 743-744, appeal dismissed sub nom. Krause v. Ohio (1972), 409 U.S. 1052, 93 S.Ct. 557, 34 L.Ed.2d 506.

In 1975, the General Assembly enacted legislation creating the Court of Claims and specifying the forum and manner in which actions may be brought against the state and its officers and employees. R.C. 2743.01 to 2743.72. R.C. 2743.02(A)(1)

provides the following:

"The state hereby waives its immunity from liability and consents to be sued, and have its liability determined, in the court of claims created in this chapter in accordance with the same rules of law applicable to suits between private parties, except that the determination of liability is subject to the limitations set forth in this chapter ***.  To the extent that the state has previously consented to be sued, this chapter has no applicability.

"Except in the case of a civil action filed by the state, filing a civil action in the court of claims results in a complete waiver of any cause of action, based on the same act or omission, which the filing party has against any officer or employee, as defined in section 109.36 of the Revised Code. The waiver shall be void if the court determines that the act or omission was manifestly outside the scope of the officer's or employee's office or employment or that the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner."

In Cooperman v. Univ. Surgical Assoc., Inc. (1987), 32 Ohio St.3d 191, 513 N.E.2d 288, paragraph two of the syllabus, we held that "[a] court of common pleas does not lack jurisdiction over an action against state officers or employees merely because the Court of Claims has not first determined that the act or omission, which is the subject of the action, was manifestly outside the scope of the officer's or employee's office or employment, or that the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner, unless the aggrieved party has filed a suit in the Court of Claims based on the same act or omission.  (R.C. 2743.02[A][1], construed and applied.)"

As a result of Cooperman, the General Assembly enacted R.C. 2743.02(F), which provides:

"A civil action against an officer or employee, as defined in section 109.36 of the Revised Code, that alleges that the officer's or employee's conduct was manifestly outside the scope of his employment or official responsibilities, or that the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner shall first be filed against the state in the court of claims, which has exclusive, original jurisdiction to determine, initially, whether the officer or employee is entitled to personal immunity under section 9.86 of the Revised Code and whether the courts of common pleas have jurisdiction over the civil action.

"The filing of a claim against an officer or employee under this division tolls the running of the applicable statute of limitations until the court of claims determines whether the officer or employee is entitled to personal immunity under section 9.86 of the Revised Code."

Thus, under the unambiguous terms of R.C. 2743.02, the Court of Claims has exclusive, original jurisdiction to determine whether a state employee is entitled to personal immunity under R.C. 9.86.

R.C. 9.86 states:

"Except for civil actions that arise out of the operation of a motor vehicle and civil actions in which the state is the plaintiff, no officer or employee shall be liable in any civil

action that arises under the law of this state for damage or injury caused in the performance of his duties, unless the officer's or employee's actions were manifestly outside the scope of his employment or official responsibilities, or unless the officer or employee acted with malicious purpose, in bad faith, or in a wanton or reckless manner.

"This section does not eliminate, limit, or reduce any immunity from civil liability that is conferred upon an officer or employee by any other provision of the Revised Code or by case law. This section does not affect the liability of the state in an action filed against the state in the court of claims pursuant to Chapter 2743. of the Revised Code."

If the Court of Claims determines that the employee was acting within the scope of employment, in furtherance of the interests of the state, the state has agreed to accept responsibility for the employee's acts. R.C. 9.86 and 2743.02(A). In that event, only the state is subject to suit, and the litigation must be pursued in the Court of Claims. If the Court of Claims determines that the employee's acts did not further the interests of the state, i.e., the employee was acting outside the scope of his employment, maliciously, in bad faith, or in a wanton or reckless manner, the state has not agreed to accept responsibility for the employee's acts and the employee is personally answerable for his acts in a court of common pleas.

In a similar case recently decided by this court, we held that R.C. 2743.02(F) is a statute which "patently and unambiguously" takes away the common pleas court's original jurisdiction under R.C. 2305.01 in a specific class of cases. State ex rel. Sanquily v. Lucas Cty. Court of Common Pleas (1991), 60 Ohio St.3d 78, 80, 573 N.E.2d 606, 609. In Sanquily, this court allowed a writ of prohibition to prevent a court of common pleas from proceeding with an action against a state employee until the Court of Claims determined whether the employee was immune from suit. We concluded that "R.C. 2743.02(F) vests exclusive original jurisdiction in the Court of Claims to determine whether [an officer or employee of the state] is immune from suit. Until that court decides whether [the officer or employee] is immune, the common pleas court is totally without jurisdiction over the litigation against him." Id.

Although Conley has waived any claim he had against the state, Shearer is still entitled to any immunity from suit that may exist. Such a rule bars plaintiffs with claims against state officers and employees from waiving claims against the state in the hope of maintaining an action against the officer or employee individually, thereby avoiding the jurisdictional prerequisite of R.C. 2743.02(F). Only after the Court of Claims determines that a state employee acted outside the scope of his or her employment or acted with malicious purpose, in bad faith, or in a wanton or reckless manner may a plaintiff bring an action against the employee in a court of common pleas. Tschantz v. Ferguson (1989), 49 Ohio App.3d 9, 12, 550 N.E.2d 544, 547, appeal dismissed (1991), 57 Ohio St.3d 131, 566 N.E.2d 655. If the Court of Claims finds that the employee was acting within the scope of employment and without malice, bad faith, or wantonness or recklessness, then the plaintiff

may pursue the action against the state in the Court of Claims.

Conley argues that R.C. 2743.02(F) denies him equal protection of the laws because that statute requires him to first obtain a determination by the Court of Claims with regard to the potential immunity of Shearer; that this requirement forces him to incur the additional expense of a separate action in the Court of Claims; that if no claim exists against the state, the initiation of a lawsuit against the state in the Court of Claims is a useless act; and that there is no rational basis supporting R.C. 2743.02(F). Conley also asserts that the statute is unconstitutional because it deprives him of his right to a trial by jury.

"The equal protection of law implies that all litigants similarly situated may appeal to courts for both relief and defense under like conditions, with like protection, and without discrimination." Sexton v. Barry (C.A.6, 1956), 233 F.2d 220, 224. "Equal protection of the law means the protection of equal laws. It does not preclude class legislation or class action provided there is a reasonable basis for such classification. The prohibition against the denial of equal protection of the laws requires that the law shall have an equality of operation on persons according to their relation. So long as the laws are applicable to all persons under like circumstances and do not subject individuals to an arbitrary exercise of power and operate alike upon all persons similarly situated, it suffices the constitutional prohibition against the denial of equal protection of the laws. Senior v. Ratterman [1887], 44 Ohio St. 661 [11 N.E. 321], Xenia v. Schmidt [1920], 101 Ohio St. 437 [130 N.E. 24]." Dayton v. Keys (1969), 21 Ohio Misc. 105, 114, 50 O.O.2d 29, 34, 252 N.E.2d 655, 660.

Conley argues that R.C. 2743.02(F) discriminates against him and others on the basis of wealth, in that the costs of litigating his claims are increased by requiring him first to seek a determination in the Court of Claims as to the immunity from suit of Shearer. As a result, he argues, R.C. 2743.02(F) violates the Equal Protection Clauses of both the United States and Ohio Constitutions.

We first note that, as a general rule, "[a]ll legislative enactments enjoy a presumption of constitutionality." Sedar v. Knowlton Constr. Co. (1990), 49 Ohio St.3d 193, 199, 551 N.E.2d 938, 944, citing Hardy v. VerMeulen (1987), 32 Ohio St.3d 45, 48, 512 N.E.2d 626, 629; State v. Dorso (1983), 4 Ohio St.3d 60, 61, 4 OBR 150, 151, 446 N.E.2d 449, 450; State ex rel. Dickman v. Defenbacher (1955), 164 Ohio St. 142, 57 O.O. 134, 128 N.E.2d 59, paragraph one of the syllabus. Courts must apply all presumptions and germane rules of construction to uphold a challenged statute if at all possible. Sedar, supra, at 199, 551 N.E.2d at 944, citing Dorso, supra, at 61, 4 OBR at 151, 446 N.E.2d at 450. Only if the unconstitutionality of a statute is shown beyond a reasonable doubt can the statute be declared invalid. Bd. of Edn. v. Walter (1979), 58 Ohio St.2d 368, 376, 12 O.O.3d 327, 332, 390 N.E.2d 813, 819.

The test used in determining whether a statute is constitutional under the Equal Protection Clause depends upon whether a fundamental interest or suspect class is involved. "Under the equal protection clause, in the absence of state

action impinging on a fundamental interest or involving a suspect class, a rational basis analysis is normally used. Where the traditional rational basis test is used great deference is paid to the state, the only requirement being to show that the differential treatment is rationally related to some legitimate state interest."  State ex rel. Heller v. Miller (1980), 61 Ohio St.2d 6, 11, 15 O.O.3d 3, 6, 399 N.E.2d 66, 69.  See, also, Lyle Constr., Inc. v. Div. of Reclamation (1987), 34 Ohio St.3d 22, 516 N.E.2d 209.  Where a fundamental interest or suspect class is at issue, a stricter test is used,  Massachusetts Bd. of Retirement v. Murgia (1976), 427 U.S. 307, 96 S.Ct. 2562, 49 L.Ed.2d 520, and the government will have to demonstrate that a classification created by law is necessary to promote a compelling governmental interest. State ex rel. Brown v. Summit Cty. Bd. of Elections (1989), 46 Ohio St.3d 166, 168, 545 N.E.2d 1256, 1259.

Generally, classifications based upon wealth do not trigger any heightened scrutiny under an equal protection analysis, James v. Valtierra (1971), 402 U.S. 137, 91 S.Ct. 1331, 28 L.Ed.2d 678; San Antonio Ind. School Dist. v. Rodriguez (1973), 411 U.S. 1, 93 S.Ct. 1278, 36 L.Ed.2d 16; however, where fundamental rights are involved, a court will look more closely at laws which distinguish on the basis of wealth between those within and those outside a designated class.  Boddie v. Connecticut (1971), 401 U.S. 371, 91 S.Ct. 780, 28 L.Ed.2d 113 (access to courts--filing fee for divorce action); Smith v. Bennett (1961), 365 U.S. 708, 81 S.Ct. 895, 6 L.Ed.2d 39 (access to courts--filing fee for application for writ of habeas corpus and appeal).  See, also, Harper v. Virginia Bd. of Elections (1966), 383 U.S. 663, 668, 86 S.Ct. 1079, 1082, 16 L.Ed.2d 169, 173 ("Lines drawn on the basis of wealth or property, like those of race, *** are traditionally disfavored.").  As Conley raises his equal protection argument with respect to the right to sue in a civil action (access to courts), a fundamental right is arguably involved.  Section 16, Article I of the Ohio Constitution2; Boddie, supra; Smith, supra.

However, Conley has made no showing that R.C. 2743.02(F) creates an impermissible wealth-based classification on its face or in its application or effect.  In fact, R.C. Chapter 2743 makes no classification on the basis of wealth at all.  No line has been drawn between rich and poor by R.C. 2743.02(F). The Rules of the Court of Claims and the Local Rules of the Court of Claims permit an action to be filed by an indigent plaintiff without a filing fee, C.C.R. 2(B) and L.C.C.R. 3(B), and the action may be transferred to the plaintiff's home county for trial upon a showing of hardship and whenever justice dictates, R.C. 2743.03(B) and L.C.C.R. 5(B).  Contrary to his fears, Conley may pursue an action in the Court of Claims without incurring the expense of litigating in Columbus.  Thus, Conley has not been foreclosed from access to the courts because of his alleged economic status.

As this court has previously held, where there is no classification, there is no discrimination which would offend the Equal Protection Clauses of either the United States or Ohio Constitutions.  Krause, supra.  See, also, Commonwealth v. Purdy (1990), 408 Mass. 681, 685, 562 N.E.2d 1347, 1350 (in the

absence of a sufficient legal classification, equal protection analysis is not triggered). Additionally, Conley's argument fails as there is no fundamental right to sue the state or its employees. The state voluntarily consents to be sued and may qualify and draw perimeters around the granted right without violating equal protection. Grange Mut. Cas. Co. v. Columbus (1989), 49 Ohio App.3d 50, 52, 550 N.E.2d 524, 527.

Conley also attacks R.C. 2743.02 on equal protection grounds because the statute requires him to pursue an action in the Court of Claims as a condition precedent to an action in common pleas court against a state employee. He essentially asserts that R.C. 2743.02(F) violates the Equal Protection Clauses of both the United States and Ohio Constitutions by imposing a condition not present in a suit against other individuals. As no fundamental interest or suspect class is involved, we will apply the rational basis test. Lyle Constr., Inc., supra; see, also, State ex rel. Heller v. Miller, supra. Applying that test, we conclude that R.C. 2743.02(F) is reasonable and does not violate equal protection of the laws. The statute does not create an arbitrary limitation on litigation against state employees. The immunity-from-lawsuit provisions found in R.C. 2743.02(F) and 9.86 contribute to effective government by freeing state employees from the intimidation of vexatious litigation, the burden of defending lawsuits, and personal liability. As Judge Learned Hand noted in Gregoire v. Biddle (C.A.2, 1949), 177 F.2d 579, 581:

"The justification for *** [immunity for public officials and employees] is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties."

The United States Court of Appeals for the Third Circuit also noted public policy reasons supporting immunity for public officials, and indirectly all public employees, in Bauers v. Heisel (C.A.3, 1966), 361 F.2d 581, 590, fn. 9, certiorari denied (1966), 386 U.S. 1021, 87 S.Ct. 1367, 18 L.Ed.2d 457, quoting Note (1953), 66 Harv.L.Rev. 1285, 1295, fn. 54:

"'(1) the danger of influencing public officials by threat of a law suit; (2) the deterrent effect of potential liability on [people] *** who are considering entering public life; (3) the drain on the valuable time of the official caused by insubstantial suits (which would require inordinate private record keeping ***); (4) the unfairness of subjecting officials to liability for the acts of their subordinates; (5) the theory that the official owes a duty to the public and not to the individual; (6) the feeling that the ballot and the formal removal proceeding are more appropriate ways to enforce honesty and efficiency of public officers.'"

Further, as the court of appeals in this case noted, determination of immunity by the Court of Claims, in a single forum, "prevents the possibility of widely divergent interpretations of when R.C. 9.86 immunity applies." Therefore, because it is rationally related to a legitimate legislative purpose, we hold that R.C. 2743.02(F) does not

violate the Equal Protection Clauses of the United States and Ohio Constitutions.

Conley further challenges R.C. 2743.02 as a violation of his right to a trial by jury. The question of whether Shearer is entitled to immunity as a governmental employee is a question of law for which there is no right to trial. A jury trial is necessary only when the case requires resolution of factual issues which are triable to a jury in comparable civil actions. See Erie Ins. Group v. Fisher (1984), 15 Ohio St.3d 380, 381-382, 15 OBR 497, 498-499, 474 N.E.2d 320, 322. See, also, R.C. 2311.04 and Civ.R. 56(C). "Whether immunity may be invoked is a purely legal issue, properly determined by the court prior to trial, Donta v. Hooper (C.A.6, 1985), 774 F.2d 716, 719, certiorari denied (1987), 483 U.S. 1019 [107 S.Ct. 3261, 97 L.Ed.2d 760], and preferably on a motion for summary judgment." Roe v. Hamilton Cty. Dept. of Human Serv. (1988), 53 Ohio App.3d 120, 126, 560 N.E.2d 238, 243.

If the Court of Claims determines that a state employee was acting outside the scope of employment and, therefore, is personally responsible for his or her acts and is subject to suit in a common pleas court, the plaintiff and the state employee retain the right to have a jury hear and determine all factual issues presented at trial. Thus, any right to a jury trial which Conley may have had was not infringed by the procedure found in R.C. 2743.02(F). Alternatively, because R.C. 2743.02(F) is procedural in nature, it does not violate any substantive rights, including the right to a trial by jury. Shew v. Greene (Apr. 24, 1989), Warren App. No. CA88-09-070, unreported, 1989 WL 38943.

Finally, we address an issue not expressly raised by Conley, but which is evident from the record and constitutes plain error: dismissal of his claim under Section 1983, Title 42, U.S. Code. A cause of action under Section 1983 must allege that a person, acting "under color of law," deprived the plaintiff of a constitutionally guaranteed federal right. Cooperman, supra. The trial court dismissed Conley's Section 1983 claim on the same grounds as his other claims, i.e., lack of subject matter jurisdiction pursuant to R.C. 2743.02 and R.C. 9.86. Those sections, however, do not apply to claims brought under federal law. R.C. 9.86 expressly limits its coverage to "any civil action that arises under the law of this state ***." (Emphasis added.)

Moreover, the United States Supreme Court has concluded that "'"[c]onduct by persons acting under color of state law which is wrongful under 42 U.S.C. { 1983 or { 1985(3) cannot be immunized by state law,"'" "'even though the federal cause of action [was] being asserted in the state courts.'" Howlett v. Rose (1990), 496 U.S. 356, 376, 110 S.Ct. 2430, 2443, 110 L.Ed.2d 332, 353, quoting Martinez v. California (1980), 444 U.S. 277, 284, 100 S.Ct. 553, 558, 62 L.Ed.2d 481, 488, and at fn. 8. The court in Howlett continued, "'[a] construction of [Section 1983 or 1985(3)] which permit[s] a state immunity defense to have controlling effect would transmute a basic guarantee into an illusory promise; and the supremacy clause of the Constitution insures that the proper construction may be enforced.'" Id. Similarly, federal courts in Ohio have concluded that R.C. 9.86 and 2743.02(F) do not apply to Section

1983 claims even when such claims are pursued in state court. Haynes v. Marshall (C.A.6, 1989), 887 F.2d 700; Evans v. Celeste (S.D.Ohio 1989), 718 F.Supp. 641; see, also, Parks v. Wilkins (S.D.Ohio 1988), 716 F.Supp. 1028. Further, we have previously held that a court of common pleas has jurisdiction to hear claims brought under Section 1983 against the state and officers and employees of the state. Schwarz v. Ohio State Univ. Bd. of Trustees (1987), 31 Ohio St.3d 267, 31 OBR 493, 510 N.E.2d 808.

Because it was not necessary for Conley to comply with the requirements of R.C. 2743.02 in bringing his Section 1983 claim, a federal law claim, we find that it was plain error for the trial court to dismiss his claim on those grounds. See Calmes v. Goodyear Tire & Rubber Co. (1991), 61 Ohio St.3d 470, 475, 575 N.E.2d 416, 420, fn. 3; O'Connell v. Chesapeake & Ohio RR. Co. (1991), 58 Ohio St.3d 226, 229-230, 569 N.E.2d 889, 892-893. Therefore, we remand that claim to the trial court for further proceedings consistent with this opinion.

Accordingly, for all the foregoing reasons, we affirm the court of appeals' judgment in part, reverse it in part, and remand the cause to the trial court.

Judgment affirmed in part,
reversed in part
and cause remanded.

Sweeney, Holmes, Douglas, Wright, H. Brown and Resnick, JJ., concur.

FOOTNOTES:

1 The Bureau of Criminal Identification and Investigation is a subdivision of the Ohio Attorney General's office, an official agency of the state of Ohio. R.C. 109.51.

2 Section 16, Article I of the Ohio Constitution provides:

"All courts shall be open, and every person, for an injury done him in his land, goods, person, or reputation, shall have remedy by due course of law, and shall have justice administered without denial or delay.

"Suits may be brought against the state, in such courts and in such manner, as may be provided by law."