OPINION
{¶ 1} Appellant, Z.S., appeals the decision of the Clermont County Court of Common Pleas, Juvenile Division, to impose a consecutive term of commitment to the Department of Youth Services ("DYS"). We affirm the juvenile court for the reasons outlined below.
 {¶ 2} On December 8, 2004, appellant was found delinquent for committing four counts of burglary (three felonies of the second degree if committed by an adult, and one felony of the fourth degree if committed by an adult), and one count of breaking and entering, a felony of the fifth degree if committed by an adult.
 {¶ 3} Appellant was adjudicated delinquent and committed to DYS for an indefinite term of a minimum of four years after the juvenile court imposed three 12-month minimum commitments and two six-month minimum commitments to be served consecutively to each other.[1] Appellant filed this appeal, setting forth two assignments of error.
 {¶ 4} Assignment of Error No. 1:
 {¶ 5} "Ohio Revised Code Section 2152.17(F) violates the Equal Protection Clause of the Fourteenth Amendment to the United States Constitution and Article I, Section 2 of the Ohio Constitution because it does not require the juvenile court to make any findings before it imposes a consecutive sentence for a felony offense in a juvenile delinquency proceeding * * *."
 {¶ 6} Appellant argues that he was denied equal protection under the law because R.C. 2152.17(F) contains no requirement that juvenile court provide any findings on the record to impose a consecutive term of disposition for juveniles, when R.C.2929.14(E)(4) and R.C. 2929.19(19 (B)(2)(c) require that trial courts make certain findings and give reasons before imposing consecutive prison sentences in the context of adult offenders.[2]
 {¶ 7} A review of the record indicates that appellant failed to raise this issue before the juvenile court. An appellate court will not consider any error which counsel for the complaining party could have called to the attention of the lower court at a time when such alleged error could have been avoided or corrected by the lower court. State v. Awan (1986), 22 Ohio St.3d 120,122. Constitutional rights "may be lost as finally as any others by a failure to assert them at the proper time." Id. The question of the constitutionality of a statute must generally be raised in the trial court. Id. The waiver doctrine stated in Awan is discretionary. In re M.D. (1988), 38 Ohio St.3d 149, syllabus.
 {¶ 8} We note R.C. 2152.17(F) became law on January 1, 2002, and appellant's multiple delinquent acts were committed in 2003 and 2004.[3] Yet, appellant failed to raise any argument before the juvenile court that it would be error to impose consecutive terms without making specific findings. We decline to exercise our discretion to consider for the first time on appeal an issue that could have been, but was not raised below. See Inre S.C., Montgomery App. Nos. Civ.A. 20562, Civ.A. 20565, Civ.A. 20563, Civ.A. 20564, 2005-Ohio-810, ¶ 12-14 (court declined to exercise discretion to consider same assignment of error raised in the present case). Accordingly, appellant's first assignment of error is overruled.
 {¶ 9} Assignment of Error No. 2:
 {¶ 10} "[Z.S.] was denied his constitutional right to effective assistance of counsel under the Sixth andFourteenth Amendments to the United States Constitution and Article I, Sections 10 and 16 of the Ohio Constitution * * *."
 {¶ 11} Appellant argues that his trial counsel provided ineffective assistance because he failed to object to the juvenile court's imposition of consecutive terms in disposition.[4] To decide appellant's claim of ineffective assistance of counsel, we must apply the two-tier test ofStrickland v. Washington (1984), 466 U.S. 668, 104 S.Ct. 2052. First, appellant must show that counsel's actions were outside the wide range of professionally competent assistance. Second, appellant must show that he was prejudiced as a result of counsel's actions. Id. at 687.
 {¶ 12} A court "must indulge a strong presumption that counsel's conduct falls within the wide range of reasonable professional assistance." Id. at 689. To establish prejudice, "the defendant must show that there is a reasonable probability that, but for the counsel's unprofessional errors, the result of the proceeding would have been different." Id. at 694.
 {¶ 13} During our review of the alleged ineffective assistance of counsel claim, we will consider the argument that R.C. 2152.17(F) violates appellant's constitutional right to equal protection under the law when it fails to require the juvenile court to make findings for consecutive commitments, and then we will determine whether trial counsel was ineffective for not objecting to the disposition.
 {¶ 14} Appellant argues that the 2002 changes to the juvenile code shifted the emphasis from rehabilitation toward punishment and, therefore, made the juvenile code more analogous to the adult sentencing scheme and its requirements that findings be made before imposing consecutive sentences.
 {¶ 15} R.C. 2152.17(F), states, in pertinent part, that where a child is adjudicated a delinquent child for committing two or more acts that would be felonies if committed by an adult and is committed to a secure facility with DYS, "the court may order that all of the periods of commitment imposed under those sections for those acts be served consecutively in the legal custody of the department of youth services * * *. A court shall not commit a delinquent child to DYS under this division for a period that exceeds the child's attainment of twenty-one years of age."
 {¶ 16} Under the felony sentencing laws of the adult system, R.C. § 2929.14 (E)(4) states, in part, that before a trial court may impose consecutive sentences, the trial court must find that consecutive sentences are necessary to protect the public from future crime or to punish the offender, and that consecutive sentences are not disproportionate to the seriousness of the offender's conduct and to the danger the offender poses to the public, and if the court also finds any of three additional findings. R.C. 2929.14(E)(4). The trial court must also give reasons in support of those findings. R.C. 2929.19(B)(2)(c).
 {¶ 17} The guarantee of equal protection of the laws means that "no person or class of persons shall be denied the same protection of the law which is enjoyed by other persons or other classes in the same place and under like circumstances." Statev. Gledhill (1984), 13 Ohio App.3d 372, 373; State v.DePascale (1983), 11 Ohio App.3d 163. The Equal Protection Clause does not require that a state never distinguish between citizens, but only that the distinctions made are not arbitrary or invidious. Avery v. Midland County, Texas (1968),390 U.S. 474, 484, 88 S.Ct. 1114; In re Vaughn (Aug. 13, 1990), Butler App. No. CA89-11-162. The Constitution does not require things that are different in fact or opinion to be treated in law as though they were the same. Plyler v. Doe (1982), 457 U.S. 202,216, 102 S.Ct. 2382. The standard for determining whether a statute or ordinance violates equal protection is the same under the state and federal constitutions. In re Joshua R.C., Erie App. No. E-05-016, E-050-17, E-05-018, 2005-Ohio-6248, ¶ 9.
 {¶ 18} We begin our discussion by noting that the following cases from different appellate districts found no constitutional violation after considering the argument that R.C. 2152.17(F) violates equal protection by not requiring findings before imposition of consecutive terms: In re R.L., Cuyahoga App. Nos. 84543, 84545, 84546, 2005-Ohio-26; In re Joshua R.C.; In reChappell, Mahoning App. No. 04 MA 225, 2005-Ohio-6451; In reSlater, Wayne App. Nos. 04CA0004, 04CA0005, 2004-Ohio-4961, appeal not allowed 105 Ohio St.3d 1439, 2005-Ohio-531. Further, four additional cases also found no equal protection infringements within the context of other juvenile dispositional concerns: In re Gillespie, 150 Ohio App.3d 502, 2002-Ohio-7025
(juvenile right to bail), appeal not allowed 98 Ohio St.3d 1513,2003-Ohio-1572; In re J.H., Cuyahoga App. No. 85753.2005-Ohio-5694 ("maximum" term on firearm specification); In reEstes, Washington App. No. 04CA11, 2004-Ohio-5163 (juvenile probation violation); and In re Walker, Franklin App. No. 02AP-421 (juvenile probation), appeal not allowed99 Ohio St.3d 1542, 2003-Ohio-4671.[5]
 {¶ 19} All legislative enactments enjoy a presumption of constitutionality. Conley v. Shearer, 64 Ohio St.3d 284, 289,1992-Ohio-133. Courts must apply all presumptions and rules of construction to uphold a challenged statute. Id.
 {¶ 20} When determining whether a statute violates the right to equal protection, a court must determine whether the classification disadvantages a "suspect class," or impinges upon the exercise of a "fundamental right." Plyler v. Doe (1982),457 U.S. 202, 216-217, 102 S.Ct. 2382. "With respect to such classifications, it is appropriate to enforce the mandate of equal protection by requiring the state to demonstrate that its classification has been precisely tailored to serve a compelling governmental interest." Id.
 {¶ 21} We note that a review of the case law reveals that juvenile offenders previously challenged the constitutionality of R.C. 2152.17(F) with the argument that juveniles constituted a "suspect class." However, courts found no merit to this argument.In re R. L. at ¶ 16 (juveniles have never been treated as a suspect class); In re Walker, Franklin App. No. 02AP4-21, ¶ 29 (juveniles are not a suspect class for purposes of an equal protection analysis); In re Chappell, ¶ 38; c.f. In re Vaughn
(Aug. 13, 1990), Butler App. No. CA89-11-162.
 {¶ 22} Appellant now argues that the issue before the court involves a deprivation of liberty and affects a fundamental right. Appellant provides no authority to support his argument that a statute that permits a juvenile court to impose consecutive term of commitment without a statement of findings impinges upon his exercise of a fundamental right, and we found no authority for such proposition. See In re Slater at ¶ 7, appeal not allowed 105 Ohio St.3d 1439, 2005-Ohio-531 (appellant asserted that he was entitled to specific findings before consecutive sentences could be imposed, court stated that it could find no authority that such a right was a fundamental right); see, also, In re Chappell at ¶ 45-49 (appellant argued that juvenile detention is a deprivation of liberty, but appellate court, finding no equal protection violation, stated that distinctions between juveniles and adults are permitted in the context of incarceration and detention); In re Estes,
Washington App. No. 04CA11, 2004-Ohio-5163, at ¶ 31 (it is the nature of the conduct that resulted in the deprivation of liberty that determines the level of scrutiny utilized by the court and court declined to hold that juvenile had protected interest in violating terms of probation by bringing contraband into detention).
 {¶ 23} In the absence of state action that involves a suspect class or fundamental right, an equal protection challenge is reviewed under the "rational basis" level of scrutiny. In reChappell, ¶ 35. We find ample authority to consider appellant's issue under the rational basis level of scrutiny. Id.; In reR.L., ¶ 17; In re Slater, ¶ 7.
 {¶ 24} Under this rational basis test, the court will uphold the statute as long as it bears a rational relationship to some legitimate state interest. Romer v. Evans (1996), 517 U.S. 620,631, 116 S.Ct. 1620; In re Chappell, ¶ 39. "Classifications are set aside only if they are based solely on reasons totally unrelated to the pursuit of the state's goals and only if no grounds can be conceived to justify them." Clements v. Fashing
(1982), 457 U.S. 957, 963, 102 S.Ct. 2836.
 {¶ 25} We agree with the premise that it is constitutionally permissible for juveniles to be treated differently from adults in the eyes of the law. In re Joshua R.C., ¶ 13; In reGillespie at ¶ 19. "[O]ur acceptance of juvenile courts distinct from the adult criminal justice system assumes that juvenile offenders constitutionally may be treated differently from adults." Bellotti v. Baird (1979), 443 U.S. 622, 635,99 S.Ct. 3035.
 {¶ 26} The Ninth District Court of Appeals stated in In reSlater that "Ohio courts have previously held that systemic differences exist between juvenile and adult criminal courts."In re Slater at ¶ 8. The Slater court noted that the overriding purpose of juvenile dispositions is to provide for the care, protection and development of children, protect the public interest and safety, hold the offender accountable, restore the victim, and rehabilitate the juvenile offender. Id. citing R.C.2152.01. Conversely, the main purpose of adult felony sentencing is to protect the public from future crime and to punish the offender. Id.; R.C. 2929.11.
 {¶ 27} A rational basis exists for sentencing juveniles in a "different fashion" than adults because the purposes of felony sentencing and juvenile sentencing are different, and juvenile courts are given wider discretion in the early release of offenders. In re Slater at ¶ 10. "Either of these factors alone provides a rational basis for the legislature to treat adults and juveniles differently for the purposes of felony sentencing." Id.
 {¶ 28} The Eighth District Court of Appeals also concluded that a rational basis exists for treating juvenile offenders differently than adult offenders because the objectives of the juvenile system differ from the adult criminal justice system.In re R.L. at ¶ 18. The state's primary objective in the adult criminal system is to deter further criminal conduct and to punish the offender, while the state's objective in the juvenile system focuses on protection, development and habilitation. Id. at ¶ 18, 20.
 {¶ 29} The distinction between the treatment of juvenile and adult offenders is "a hard-fought and well-deserved distinction," that we see no reason to supplant with one that would "diminish the value society places on the development of youth." In reR.L. at ¶ 25. The Seventh District Court of Appeals found that adult and juvenile justice systems, as a whole, were so different that it was "difficult, if not impossible, to isolate the relative importance of a single procedural difference dealing with consecutive punishments." In re Chappell at ¶ 49.
 {¶ 30} Appellant stresses that the changes in the juvenile code in 2002 shifted the focus to protecting the public and holding the offender accountable, and included a consistency in sentencing provision similar to the adult sentencing statutes. See R.C. 2152.01. Appellant cites these changes as evidence that juvenile and adult offenders should be treated similarly for sentencing purposes. The Eighth District Court of Appeals rejected this argument when it decided In re R.L. in January 2005, and this court does so now. While the 2002 code changes may have provided some shift of emphasis to elements of responsibility and accountability, the "primary focus remains on the development of the child." In re R.L. at ¶ 23.
 {¶ 31} "We cannot ignore the fact that the revisions in the juvenile code, which took effect in 2002, did not dramatically alter the basic purposes of juvenile dispositions. In reChappell at ¶ 49. "R.C. 2152.01(A) states very clearly that one of the purposes of juvenile dispositions is, `to provide for the care, protection, and mental and physical development of children. * * * There is no corresponding provision in the adult criminal statutes." Id.
 {¶ 32} The record in the case at bar demonstrates that the juvenile court was mindful of the dispositional purpose outlined in the juvenile code when it imposed the consecutive commitments to DYS for appellant's acts of delinquency. The juvenile court judge made the following statements from the bench at appellant's dispositional hearing:
 {¶ 33} "For your benefit as well as the benefit of everybody in the room. First of all, [trial counsel] has done an admirable job for you, keeping you from the adult system. You would have gone to prison for the same amount of time if not longer and you would not have the opportunities to turn your life around that you are going to have at the Department of Youth Services. You're going to have education opportunities. You can end up not only being a high school graduate but also getting a degree from a community college while you are there. So you have an opportunity for education, you've had ample opportunity for substance abuse therapy and any other therapy that you may need."
 {¶ 34} "So, while in fact you're going away for a long time to protect the community from you and to protect you from you, you have a lot of opportunities there to * * * turn your life around. We've seen it happen. Go for it, okay?"
 {¶ 35} We have reviewed the arguments of counsel and the law discussed above. We find that R.C. 2152.17(F) does not deny appellant the same protection of the law that is enjoyed by other persons or classes in the same place and under the same circumstances. Given the different objectives between juvenile delinquency dispositions and adult felony sentencing, appellant is not in the same place and under the same circumstances as adult felony offenders. C.f. In re Gillespie, ¶ 24 (juveniles adjudicated delinquent and adults convicted of crimes are not groups similarly situated and the proper comparison is not whether a juvenile is treated like an adult in the judicial system, but whether a juvenile is treated equally with other juveniles). We agree with the conclusion that the juvenile and adult criminal codes still principally serve different purposes, and appellant has provided no persuasive new arguments to add to the case law on this subject.
 {¶ 36} Based upon our finding that R.C. 2152.17(F) is not constitutionally infirm on the issues discussed here, the conduct of appellant's trial counsel in not objecting to both the consecutive sentences and the lack of findings to impose consecutive sentences cannot be found to constitute ineffective assistance of counsel. See In re R.L. at ¶ 27 (where court found that consecutive term commitment was not improper, failure of trial counsel to challenge the commitment cannot be said to constitute ineffective assistance of counsel); In re JoshuaR.C. at ¶ 24.
 {¶ 37} Further, we disagree with appellant's argument that his trial counsel did not advocate on his behalf. The excerpt from the transcript quoted above indicates that appellant was facing transfer to the adult criminal courts. Trial counsel's negotiated agreement kept appellant in the juvenile system, and preserved access to educational and rehabilitative programs within the juvenile system. Trial counsel's representation did not fall outside the range of professionally competent assistance. Appellant's second assignment is overruled.
 {¶ 38} Judgment affirmed.
Powell, P.J., and Young, J., concur.
[1] Appellant's maximum term is not to exceed the juvenile's attainment of twenty-one years of age. R.C. 2152.16, R.C.2152.17.
[2] While appellant argues that the trial court should have made findings and provided reasons for the consecutive terms, for ease of discussion, we will only use the word "findings" throughout this opinion.
[3] Before the 2002 changes in the juvenile code, R.C.2151.355(B)(3) permitted the imposition of consecutive commitments with no mention of a requirement to make any finding.
[4] Appellant's issue for review under his second assignment cites the imposition of court costs as error. The issue for review in the body of the appellate brief contains no such mention of court costs. We will consider the issue as stated in the body of the brief.
[5] While three cases cited were released in late 2005, we note that neither party assisted this court by citing to any earlier cases. Further, appellant did not provide any cases when questioned at oral argument about other case authorities specifically on this issue.